AUSA: Ann Nee · Telephone: 810.766.5177
Special Agent : Mark Varney · Telephone: 202.763.6204

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America,

　　　　　　Plaintiff,

v.

Antonio Lynn Fluker, Jr.

　　　　　　Defendant(s).

Case No.　4:20-mj-30442
Judge: Ivy, Curtis
Filed: 10-22-2020 At 10:02 AM
SEALED MATTER (krc)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about the date(s) of <u>March 30, 2020 to July 22, 2020</u>, in the county of <u>Genesee</u> in the <u>Eastern</u> District of <u>Michigan</u>, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 and | Wire fraud and |
| 18 U.S.C. § 1957 | Money laundering |

This criminal complaint is based on these facts:
Please see the attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Mark Varney, Special Agent - USSS
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date:　October 22, 2020

_____
*Judge's signature*

City and state:　Bay City, Michigan

Patricia T. Morris, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Mark R Varney, being duly sworn, state that:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the United States Secret Service ("USSS") within the Department of Homeland Security and have been so employed since February 2019. As a Special Agent, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code. I am currently assigned to the Saginaw, Michigan, Resident Office. I have completed criminal investigator training at the Federal Law Enforcement Training Center in Glynco, Georgia as well as additional training at the USSS James J. Rowley Training Center in Beltsville, Maryland. I have participated in investigations involving bank fraud, mail fraud, identity theft, and other financial crimes during my time as a USSS Agent.

2.     I submit this Affidavit in support of a criminal complaint and arrest warrant for Antonio Lynn Fluker Jr. for violating 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1957 (money laundering).

3.     This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant; therefore, this affidavit does not contain

every fact that I have learned during the course of the investigation.  I have only set forth the facts necessary to establish probable cause to believe Fluker violated the statues identified above.  The information contained in this affidavit is based upon my personal knowledge, training and experience, as well as the combined knowledge, training, and experience of other law enforcement officers and agents with whom I have had discussions.

4.      18 U.S.C. § 1343 criminalizes schemes or artifices to defraud, or obtaining money or property by means of false or fraudulent pretenses, representations, or promises, when for the purpose of executing the scheme, the person transmits, or causes to be transmitted, any writings, signs, signals, pictures, or sounds by means of wire communication in interstate commerce.

5.      18 U.S.C. § 1957 makes it a crime to knowingly engage, or attempt to engage, in a monetary transaction with proceeds of a specified unlawful activity, including violations of 18 U.S.C. § 1343, in an amount greater than $10,000 by, through, or to a financial institution.

## ANTONIO LYNN FLUKER, JR.

6.      I am currently investigating Antonio Lynn Fluker Jr. for violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1957 (money laundering) related to his submission of various fraudulent loan applications. Fluker is currently on federal supervised release following his conviction and imprisonment for identity

theft. *See United States v. Fluker*, No. 09-cr-20614. In that case, Fluker devised a scheme where he used credit cards in victims' names without their authorization and possessed numerous credit reports for other individuals. The loss sustained as result of this offense amounted to more than $200,000. While in custody prior to his sentencing in that case, Fluker and an associate, Ricky Jones, produced and tendered a fraudulent document purporting to authorize Fluker's release from custody, and purportedly signed by a federal judge. As a result, Fluker was charged with escape from federal custody. *See United States v. Fluker*, No. 11-cr- 20631. Fluker was subsequently sentenced to concurrent terms of imprisonment of 105 months and 30 months, respectively, in these cases.

## ECONOMIC INJURY DISASTER LOAN FRAUD

7.     According to the Small Business Administration ("SBA"), the Economic Injury Disaster Loan ("EIDL") is a loan program designed to provide economic relief to businesses that are currently experiencing a temporary loss of revenue due to the coronavirus (Covid-19). EIDL proceeds can be used to cover a wide array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments that could have been met had the disaster not occurred. Small businesses owners may apply for these loans.

8.      Applicants apply for EIDL loans online through the SBA's website. SBA relies on self-certifications to verify if an applicant is an eligible entity. Applicants provide gross revenues and cost of goods sold for the twelve month period prior to the date of disaster. This information is then used by SBA systems to calculate the principle amount of money the small business is eligible to receive in the form of an EIDL. Applicants make these self-certifications under the penalty of perjury.

9.      The SBA Office of Disaster Assistance ("ODA") controls the EIDL program and is headquartered in Washington, DC. The ODA has authority over all loans created and disbursed under the EIDL program. EIDL principal proceeds are solely funded by the SBA and are disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States. Funds are deposited via Automated Clearing House ("ACH") transfers, which are a type of electronic bank transfer of funds. All payments are processed by the SBA from Denver, Colorado.

10.     On May 21, 2020, Fluker received an EIDL loan disbursement in the amount of $149,900. This amount was deposited via ACH into a Huntington Bank account, with account number ending in 0172, in the name of ETRA Distributors LLC ("Huntington ETRA 0172"). Huntington Bank confirmed that the account had been opened in 2018 and had little activity prior to the loan deposit.

11.     According to the Michigan Department of Licensing and Regulatory Affairs ("LARA"), ETRA Distributors was established on April 12, 2010. On April 15, 2010, a certificate of change of registered agent was filed, changing the registered agent from C.U. to Antonio Fluker. On December 10, 2018, Fluker filed historical annual statements for years 2011-2019, as well as a certificate of restoration of good standing, listing himself as agent and the business address as 14XX W Moore St., Flint, MI.

12.     Special Agents from Small Business Administration Office of Inspector General, provided myself with the complete application for Fluker's Economic Injury Disaster Loan (EIDL), which I have reviewed.

13.     On March 30, 2020, Fluker applied for the EIDL loan for ETRA Distributors using IP Address 2601:404:0:9510:bdd0:deed:95c1:3e7f. Comcast confirmed that this IP Address was associated with subscriber Ricky Jones at 14XX Sun Terrace Drive, Flint, MI. As set forth above, Ricky Jones is a known associate of Fluker, who participated in a prior fraudulent scheme by Fluker to obtain Fluker's release from federal custody by use of a forged judicial document. The address at 14XX Sun Terrace Drive was also confirmed to be Fluker's address during the course of the investigation.

14.     The loan application asserted a primary business address for ETRA Distributors of 14XX W Moore Street, Flint, MI 48504.  I have observed this

address, which appears to be a single family residence in Flint, MI. According to

Genesee County Register of Deeds, 14XX W Moore is owned by C. D., Fluker's

grandmother.

15.    On the EIDL application, Fluker claimed that he was the CEO and

100% owner of ETRA Distributors, that the company had five employees, and that

the gross revenues for the company for the 12 months prior to the disaster were

$500,000, with $0 cost of goods sold.

16.    The EIDL loan application includes the following question: "For any

criminal offense – other than a minor vehicle violation – have you ever been

convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or

been placed on any form of parole or probation (including probation before

judgment)?" Fluker falsely responded "no" to this question in his online

application. As set forth above, prior to applying for the EIDL loan on March 30,

2020, Fluker had been convicted of at least two felonies. At the time that he

submitted the application, Fluker was on federal supervised release.

17.    In his EIDL loan application, Fluker certified that all information in

the application and submitted with the application was true and correct to the best

of his knowledge. On the loan authorization and agreement, Fluker also certified

that all representations in the borrower's loan application (including all

supplementary submissions) were true, correct and complete and offered to induce

SBA to make the loan. Because Fluker falsely stated in his application that he had not previously been convicted of a felony, Fluker's certifications as to the truth and accuracy of the information in the application were also false.

18.     In addition to Fluker's false statements above, I submit that there is probable cause that Fluker's business, ETRA Distributors, LLC was not a business with five employees and gross revenues during the 12 months prior to the disaster of $500,000 with $0 cost of goods sold, and that these statements by Fluker in the EIDL loan application were also false.

19.     In Michigan, LLC owners are taxed in the following ways:

a.   Michigan LLC owners pay self-employment tax on business profits. Any profits are reported on Michigan personal income tax returns.

b.   Michigan LLC owners must pay state unemployment taxes for employees to the Michigan Unemployment Insurance Agency ("UIA").

20.     According to the UIA's website, unemployment insurance is administered by UIA. It is designed to provide unemployment benefits to help workers replace some of their lost wages after they have become unemployed through no fault of their own, such as by a layoff. Michigan employers are required to file Employer's Quarterly Wage/Tax Reports listing their employees and the wages earned for each quarter. A quarterly report must be filed even if the employer does not have any employees and/or wages to report for the quarter.

Employer's Wage/Tax Reports must be filed online through the Michigan Web Account Manager.

21.     On July 29, 2020, I received records from the Michigan Department of Treasury stating that Fluker had not filed any Michigan Income Taxes for years 2018 and 2019.

22.     On August 3, 2020 I received information from State of Michigan, Department of Attorney General, that they did not have UIA records for ETRA Distributors. Additionally,  Fluker had not paid any payroll taxes for ETRA Distributors.

23.     In addition to the ETRA account at Huntington where the EIDL loan was deposited, which had very little activity prior to the EIDL loan deposit, Fluker also has accounts in the name of ETRA Distributors LLC at other banks.  At Fifth Third Bank, Fluker opened an account on December 27, 2018 in the state of Michigan in the name of ETRA with account number ending in 5082 ("Fifth Third ETRA 5082"). Fluker is the sole signatory on the account. Having reviewed statements for Fifth Third ETRA 5082, I did not find any transactions between March 2019 – June 2020 that appeared to be payroll.

24.     Fluker also has an account in the name of ETRA Distributors LLC at PNC Bank, with account number ended in 3282 ("PNC ETRA 3282"). This account was opened by Fluker on December 14, 2018. From December 2018 –

September 2019, the account showed little to no activity until it started receiving

numerous high dollar deposits in September 2019. However, none of the

transactions on this account during this period appeared to be for payroll.

25.     Therefore, I submit that there is probable cause to believe that Fluker

devised and perpetrated a scheme or artifice to fraudulently obtain the $149,900

EIDL loan, which was dispersed by the SBA from the U.S. Treasury, in violation

of 18 U.S.C. § 1343. In furtherance of and to execute this scheme, Fluker sent an

electronic loan application and other writings, signs, signals, and pictures in

interstate commerce by means of wire communication, as set forth above. He

received the proceeds of the loan via an electronic funds transfer wire that crossed

state lines as well.

## PAYCHECK PROTECTION PROGRAM LOAN FRAUD

26.     The SBA defines a Paycheck Protection Program ("PPP") loan as an

SBA loan that helps businesses keep their workforce employed during the

coronavirus (Covid-19) crisis. These loans are designed to provide a direct

incentive for small businesses to keep their workers on the payroll, for businesses

that were in operation as of February 15, 2020. The SBA will forgive the loans if

all employees are kept on the payroll for eight weeks and the money is used for

payroll, rent, mortgage interest, or utilities. The loans are funded by any

participating federally insured depository institution or federally insured credit

union. Some applications to participate in the program are made directly to the lender.

27.     On July 23, 2020 I was notified by Fifth Third Bank that Fluker had received a $450,000 ACH deposit into an account in the name of Core Transportation & Logistics LLC ("Core Transportation"), with account number ending in 3979 ("Fifth Third Core 3979"). Fluker opened the Fifth Third Core 3979 account in the state of Michigan on October 5, 2018 and is the sole signatory on the account. The ACH deposit was received by Fluker from CRB Bluevine SBA. Upon seeing that Fluker received what appeared to be an SBA Loan, I contacted agents with SBA OIG.

28.     On July 24, 2020, I was contacted by a SBA OIG agent informing me that they had located a PPP loan for $450,000 under Core Transportation's Employer Identification Number ("EIN"), which was submitted on June 30, 2020. The application was submitted to BlueVine Capital Inc., based in California, and the loan was funded by an ACH wire transfer from Cross River Bank, in New Jersey, to the Fifth Third Core 3979 account.

29.     Although the PPP loan proceeds were deposited into an account opened by Fluker and for which Fluker was the sole signatory, the PPP loan application was submitted under an SSN registered to Antonio Fluker Sr., who is Fluker's father. On the application, Fluker Sr. claimed to be the 100% owner of

Core Transportation. The application stated that the $450,000 loan was for Core Transportation, with an address at 9XX Salisbury Avenue, Flint, MI 48532. Fluker Sr.'s physical address on the application was given as 41XX Brownell Boulevard, Flint, MI 48504. The application claimed that Core Transportation had ten employees and an average monthly payroll of $180,000. The PPP loan application submission also included an account statement for February 2020 for the Fifth Third Core 3979 account, and an Internal Revenue Service ("IRS") Form 940 for Core Transportation for the year 2019.

30.     As part of the application, an applicant for a PPP loan must certify that all information in the application and supporting documents and forms is true and accurate in all material respects, and that the applicant understands that making a false statement in order to obtain an SBA loan is punishable under law. As described herein, there is probable cause to believe that the application and supporting documents were not true and accurate in all material respects.

31.     According to LARA, Core Transportation & Logistics was formed on March 5, 2018. The articles of organization were submitted on February 27, 2018, listing an address of 9XX Salisbury Avenue, Flint, Michigan, and an agent of Antonio L. Fluker. No other corporate documents or annual reports were filed for the corporation between the date when its articles of incorporation were filed and

the date of the application for the SBA PPP loan.  9XX Salisbury Avenue is a 983 square foot single-family residence located in Flint, MI.

32.    As stated above, Fluker opened Fifth Third Core 3979 in the state of Michigan on October 5, 2018 and is the sole signatory on the account. According to Fifth Third Bank, Fluker Sr., whose SSN was used on the PPP application as the purported owner of Core Transportation, does not have signatory authority on the Fifth Third Core 3979 account into which the PPP loan proceeds were deposited. Furthermore, Fluker Sr. does not have any accounts with Fifth Third Bank.

33.    Fluker Sr. appears to do most of his banking with a different bank, ELGA Credit Union, where Fluker Sr. currently receives social security deposits each month. According to information from ELGA Credit Union, Fluker Sr. does not have an account at ELGA in the name of Core Transportation. The documents that ELGA has for Fluker Sr. list him as unemployed. ELGA also stated that they have no record of any regular payroll transactions on Fluker Sr.'s account.

34.    Based on my training and experience and the training and experience of other agents familiar with the investigation,  a person would not ordinarily deposit the proceeds of a legitimately  obtained $450,000 SBA PPP loan, which was intended for a corporation of which they were purportedly the sole owner, into an account over which they have no signatory authority, at a bank where they do not have an account. When loan proceeds nominally obtained by one person are

deposited into an account controlled by another person, this is often an indicator of fraud that has been carried out by the person who actually receives the funds. Here, the person who received the funds was Fluker.

35.     In order to obtain a PPP loan, an applicant must make several certifications and disclosures. For instance, the applicant must certify that within the last five years, no owner of the business has been convicted, pleaded guilty, or commenced any form of parole or probation for a felony involving fraud. As described above, Fluker began a term of federal supervised release in 2018 for an identity theft conviction involving fraud, which could have made him ineligible for a PPP loan. However, Fluker Sr. did not have such a disqualifying conviction.

36.     A PPP loan applicant also must disclose information about any other businesses that share common ownership or management with the business seeking the loan. No disclosure of common ownership or management was made in the PPP loan application for Core Transportation. However, there is probable cause to believe that Fluker actually owned both ETRA Distributors and Core Transportation, based on Fluker's sole control of the bank accounts for both companies and his subsequent use of the PPP funds, as set forth below. The failure to disclose the common ownership or management in the application was therefore fraudulent. By submitting the EIDL application for ETRA using Fluker's identifying information on the one hand, and the PPP application for Core

Transportation using Fluker Sr.'s identifying information on the other hand, Fluker was better able to avoid detection of his fraudulent misrepresentation of the common ownership or management of these two companies in obtaining his SBA loans.

37.     The submitted PPP loan application also included a copy of an IRS Form 940 for Core Transportation for 2019. Form 940 is used to determine the amount of federal unemployment tax liability for a business in a given year.  The Federal Unemployment Tax Act ("FUTA") provides funds for paying unemployment compensation to workers who have lost their jobs. Under FUTA, employers are required to report and pay unemployment taxes. According to the IRS website, the completed Form 940 for 2019 was due either on January 31, 2020 or on February 10, 2020. Blank Form 940s can be downloaded from the internet and filled out by an individual on a computer.

38.     On the Form 940 submitted with the current PPP loan application, Core Transportation claimed to be subject to state unemployment tax in Michigan. The Form 940 also stated that total payments to all employees were $1,800,000 in 2019. The Form 940 submitted with the loan application was not completely filled out, however. For instance, the lines on the Form 940 for calculating the total final amount of FUTA overpayment or balance due were blank.

39.    Furthermore, I reviewed Fluker's Fifth Third Core 3979 account statements from October 2019 – June 2020, and I did not see a payroll system that would supports a PPP loan in the amount of $450,000. There were no payments to traditional payroll processing companies such as ADP or Paycom. There were withdrawals between December 2019 – June 2019 listed as payroll, but the volume of these withdrawals was not consistent with a $450,000 PPP loan based on an average $180,000 a month in payroll. The total amount of withdrawals identified as payroll for Core Transportation were as follows:

| Month | Total Payroll |
|---|---|
| October 2019 | $0 |
| November 2019 | $0 |
| December 2019 | $450 |
| January 2020 | $2,150 |
| February 2020 | $2,025 |
| March 2020 | $8,550 |
| April 2020 | $2,000 |
| May 2020 | $2,400 |
| June 2020 | $1,510 |

40.     Moreover, in reviewing the February 2020 account statement for the Fifth Third Core 3979 account submitted with the PPP loan, the sum of all withdrawals or debits from the account for the month was less than $85,000, which is less than half of the average monthly cost of payroll claimed in the loan. The activity in the account prior to the PPP loan deposit was thus not commensurate with the size of the PPP loan received.

41.     In addition, on July 31, 2020, I received information from Michigan Department of Attorney General Criminal Investigation Division that they found no records or accounts that would indicate that Core Transportation had paid Michigan employee payroll or other required taxes. As stated above, I also received records from Michigan Department of Treasury stating that Fluker had not filed any Michigan income taxes for years 2018 and 2019. The lack of any records relating to taxes paid or tax returns filed with respect to Core Transportation supports a finding of probable cause that Core Transportation did not have ten employees and an average $180,000 in monthly payroll expenses, as stated in the PPP loan application materials.

42.     An applicant for a PPP loan must also certify in his application that all SBA loan proceeds will be used only for the business-related purposes specified in the loan application and consistent with the PPP rules, and that the applicant understands that the knowing use of funds for unauthorized purposes may result in

prosecution for fraud. In Fluker's PPP loan application, he specified that the loan proceeds would be used only for payroll, lease/mortgage interest, and utilities. As set forth below, there is probable cause to believe that the loan proceeds were fraudulently used for unauthorized purposes.

43.     Upon reviewing transactions in Fluker's Fifth Third Core 3979 after the PPP loan was deposited, I noted that Fluker made several withdrawals. On July 17, 2020, a withdrawal was made for $10,500. This withdrawal consisted of two transactions. The first transaction was a $10,000 credit to PNC ETRA 3282, which is one the accounts in the name of ETRA Distributors, discussed above, for which Fluker is the sole signatory authority. The second transaction was a $500 payment to an unknown individual.

44.     On July 20, 2020, Fluker transferred another $25,000 of PPP funds from Fifth Third Core 3979 to Fifth Third ETRA 5082, which is another account in the name of ETRA Distributors, discussed above, for which Fluker is the sole signatory authority. These funds transfers from a Core Transportation account controlled by Fluker to ETRA Distributors accounts controlled by Fluker tend to further establish that Fluker owned and managed both corporations.

45.     On July 20, 2020, Fluker also wired $75,804 to Prestige Motor Car Imports in North Miami Beach, Florida from the Fifth Third Core 3979 account. These funds were used as a down payment for the lease of a 2019 Lamborghini

Urus, which had a purchase price of $239,990. The Lamborghini was purchased

under the company ETRA Distributors, LLC with guarantor Antonio L. Fluker Jr.

Documents received from Prestige Imports relating to Fluker's vehicle transaction

included a copy of ETRA Distributors' members' meeting minutes, dated July 17,

2020, in which "Antonio L. Fluker Jr," the sole attendee, authorized Fluker to enter

into a purchase agreement for a 2020 Lamborghini Urus. They also included a

vehicle buyer's order signed by Fluker; a Lamborghini Financial Services business

application in the name of ETRA Distributors that was signed by Fluker and

contained Fluker's valid SSN; and a copy of Fluker's valid Michigan Driver's

License. These documents showing that Fluker used PPP funds from a Core

Transportation account to purchase a car in ETRA Distributors' name further tends

to establish that Fluker was the individual actually in control of both companies.

The vehicle transaction documents also included a copy of a purported federal tax

return for Fluker for 2018, claiming an adjusted gross income of $221,573. As

described above, Fluker did not submit a Michigan tax return for 2018.

     46.    The car transaction documents further show that Fluker provided a

copy of three months of Fifth Third Bank statements for what is labeled as an

account of "ETRA Distributors LLC Benefits" with account number ending in

1776 ("Fifth Third Checking 1776") in connection with the vehicle transaction.

Having reviewed bank statements provided by Fifth Third Bank, the statements

provided by Fluker to Prestige Imports were forged or fraudulent. The Fifth Third Checking 1776 account is an essential checking account registered to Fluker. Compared to the genuine account statements, the statements submitted by Fluker include altered beginning balances and daily balance summaries, and large cash deposits were also added to the statements.

47.     On July 22, 2020, a total of $45,000 was withdrawn from Fifth Third Core 3979. This withdrawal was labeled as CoreTrans 3979 Payroll. Upon review of the transaction, one transaction of $15,000 was sent to Antonio Fluker Sr. at ELGA Credit Union. The other transaction for $30,000 was sent to Anthony Johnson. Anthony Johnson is a known associate of Fluker, who previously obtained a $25,000 loan that was deposited by Fluker into Fluker's Fifth Third ETRA 5082 bank account, but which Fifth Third subsequently determined was fraudulent.

48.     On August 5, 2020, warrants to seize property subject to forfeiture for the Fifth Third Core 3979 and Fifth Third ETRA 5082 accounts were issued by U.S. Magistrate Judge Patricia Morris. In a letter addressed to the Magistrate Judge and dated September 28, 2020, Fluker claimed that those two accounts were immune and exempt from levy, and he demanded the release of the accounts back to Fluker.

49.     Based on the information above, I submit that there is probable cause to believe that Fluker devised and perpetrated a scheme or artifice to defraud Cross River Bank and obtain the $450,000 PPP loan in violation of 18 U.S.C. § 1343. There is probable cause that the scheme included falsely listing Fluker Sr. as the owner of Core Transportation. There is also probable cause that Core Transportation is not a business with ten employees and average monthly payroll of $180,000, that the entity therefore was not entitled to the $450,000 PPP loan, and that there were material false statements made in the PPP loan application as part of Fluker's fraudulent scheme. In furtherance of and to execute this fraudulent scheme, Fluker sent an electronic loan application and other writings, signs, signals, and pictures in interstate commerce by means of wire communication, as set forth above. He received the proceeds of the loan via an electronic funds transfer wire that crossed state lines as well.

50.     Furthermore, I submit that there is probable cause to believe that Fluker knowingly engaged in monetary transactions through a financial institution, while using the proceeds of his wire fraud scheme, in amounts greater than $10,000, in violation of 18 U.S.C. § 1957. Specifically, after receiving the proceeds of his PPP loan fraud in his Fifth Third Core 3979 account, Fluker used the proceeds to engage in four monetary transactions through a financial institution

in amounts greater than $10,000 to ETRA Distributors, Fluker Sr., Anthony

Johnson, and Prestige Motor Car Imports.

## **CONCLUSION**

51.    Based on the foregoing, I believe there is probable cause that Antonio

Lynn Fluker Jr. committed violations of 18 U.S.C. § 1343 (wire fraud) and 18

U.S.C. § 1957 (money laundering).


_____
Mark Varney
Special Agent
U.S. Secret Service

Sworn to before me and signed in my presence and/or by reliable electronic means

on _____October 22_____, 2020.


_____
Hon. Patricia T. Morris
U.S. Magistrate Judge